# CHARLESTON

## Burdett v. Greer.

Submitted February 4, 1908.   Decided February 11, 1908.

1. Partnership—*Dissolution—Liability of Partner.*
   All the partners are still bound, after dissolution, by a contract made during the partnership. (p. 516.)

2. Evidence—*Admission of Partner.*
   An admission by one partner, made after dissolution, of the existence of a debt against a firm, or a settlement made with him finding a debt against it, the other partner not being present when such admission or settlement is made, does not bind the other partner, and is not admissible evidence against him. (p. 520.)

3. Partnership—*Payment of Debt—Individual Note.*
   A promissory note made by one partner alone for the debt of the firm does not operate as payment, and does not release another partner from the debt, unless the creditor agrees to accept it as payment and release the other partner. (p. 522.)

Error to Circuit Court, Mason County.

Action by J. F. Burdett and George L. Burdett against Ed. R. Greer and W. E. Hayman. Judgment for plaintiff against Hayman alone, and he brings error.

*Reversed.*

H. R. HOWARD, W. R. GUNN, J. S. SPENCER, and CHARLES E. HOGG, for plaintiffs in error.

RANKIN WILEY, for defendants in error.

BRANNON, JUDGE:

The declaration in this case in *assumpsit* is one of J. F. Burdett and George L. Burdett, partners as Burdett Bros., against Ed. R. Greer and W. E. Hayman, late partners as Greer & Hayman, in the circuit court of ·Mason county, in which action Burdett Bros., recovered verdict and judgment against Hayman alone, the action having been abated as to Greer on account of his discharge as a bankrupt. The action is for pay. for· cutting and sawing timber by Burdett Bros. for Greer and Hayman under a written contract made 21st December, 1903.

It is assigned as error that the court rejected a special plea tendered by Hayman alone. It distinctly admitted that at the date of the contract on which the action rested Greer and Hayman were partners; but it alleged that on August 1, 1904, Greer & Hayman dissolved their partnership and that the plaintiffs knew it. The plea goes on further to say that upon the dissolution Greer became owner of the timber to which the contract related by purchase from Hayman of his interest, and that he purchased Hayman's interest at the instance and suggestion and advice of the plaintiffs, and that thereafter Hayman had no further connection with the performance of said contract, as he was released therefrom, "as he is advised by the acts and doings of the plaintiffs;" and that all partnership transactions under the contract upon the dissolution of the partnership. And after so stating the plea goes on to say that at the time of the accrual of the account sued on in this action and the incurrence of the indebtedness for which the action is brought, said partnership had been dissolved, and Hayman released from all liability. It is argued here that the office of this plea was to deny the partnership and put the plaintiffs upon proof of it. We do not think that it could accomplish that purpose. It distinctly admits that at the date of the contract Greer and Hayman were partners. As they were such when the contract was made they were as partners bound for its complete execution, and the dissolution afterwards could not absolve either partner from its

obligation. *Barnes* v. *Bowyer*, 34 W. Va. 303; *McCoy* v. *Jack*, 47 *Id.* 201; *Tomlinson* v. *Poling*, 31 *Id.* 108. Admitting the partnership as the plea did at the date of the contract, and the liability then accruing, the plaintiffs could sue defendants as late partners on such continuing liability, and therefore were not called on to prove the facts so admitted by the plea.

Though the plea did not call for proof by plaintiffs of the partnership, could it bar the plaintiffs' recovery? That is on the merits? Certainly not. When a partnership is dissolved its prior contracts still bind its members. The creditor is not required to look to the remaining active partner. Neither partner can be absolved from liability, unless the creditor agrees to accept him and discharge the other partners. *Dages* v. *Lee*, 20 W. Va. 584; *Bowyer* v. *Knapp*, 15 *Id.* 278; *Niday* v. *Harvey & Co.*, 9 Grat. 454. This plea does not come up to that measure. It does not allege that the plaintiffs agreed to discharge Hayman and look to Greer. Suppose that Burdett Bros. did suggest and advise Greer to purchase of Hayman. That is no evidence of an agreement to look only to Greer and release Hayman, no release of Hayman. There is no consideration in such a matter, no agreement. It might be mere friendly advice as to the advisibility as to Greer's purchase of Hayman's interest in the timber. And of course the facts stated would not bear out the allegation at the close of the plea that there was no partnerthip, whereas the opening of the plea distinctly admits it. The plea is inconsistent in this respect, in view of the admission of partnership, and besides the allegation, not allegation, but mere statement of opinion, that "therefore this defenaant denies" that the defendants were partners, is a *non sequitur.* In no yiew is that plea of any force.

The next point made is that a written contract was improperly admitted in evidence. That written contract reads thus: "This agreement made by and between Ed. R. Greer and W. R. Hayman, parties of the first part, and J. F. and G. L. Burdett, doing business under the firm name of Burdett Bros., parties of she second part. WITNESSETH, That said Burdett Bros., agree to cut, log, saw, stack, on yard at mill and deliver at the bank of the Great Kanawha River, at a place designated by said Greer and Hayman at the Sterrett Land-

ing. All the timber lying and being on the waters of Three Mile Creek." It is signed by "Greer & Hayman," and by "Burdett Bros." The theory is that it was a variance from the declaration, because the declaration charged a contract made by Greer and Hayman as partners, when the written contract itself speaks a mere joint contract by them as individuals, not a partnership contract. Now, that contract shows a joint interest or ownership by Greer and Hayman of the timber to be cut under it. And whilst it names them as individuals in the opening of the contract, when they come to the last act in its formation, namely the signature, they adopt what is *prima facie* a social or partnership name, "Greer & Hayman." *State* v. *Dry Fork*, 50 W. Va. 235; *Snyder* v. *Philadelphia Co.*, 54 *Id.* 149; Lindley on Partner., section 1147. Why say it is a joint individual contract rather than a partnership one, especially as the partnership is not denied in the record? Why not rather say that it is a partnership contract? Bates on Partnership, section 197, says, "As to the form of the signature of the firm's name, a note I promise, signed A., for A., B., C. & Co., will bind the firm. So of a contract by W., Superintendent of Keetes Mining Co., *parties* of the first part, signed W., Superintendent of Keetes Min. Co. So I promise, signed by the firm's name, A., B. & Co. So a promise by the company, signed A. B., treasurer, is the company's note." "If in the body of a note made by one partner the language is 'I promise' but signed with the partnership name, such note is binding on the firm." *Doy* v. *Bates*, 11 Johns. 544, cited Parson Partnership, section 97. But, in fact, is there anything material in the question? Say that the instrument imports a joint liability. Does not a partnership promise import joint and several liability? In *Wilson* v. *Carter Oil Co.*, 46 W. Va. 469, it is held that in *assumpsit*, where the plaintiffs are described as partners, but have a joint right of action, the description of them as partners is immaterial. It might be of import in a contest between social and individual creditors, but not in this case, both partners being liable, whether in one aspect or the other.

The court admitted evidence that Greer and the Burdetts met nearly a year after the dissolution, after the completion of the work under the contract, and made a settlement find-

ing a certain sum due to Burdett Bros. The evidence showed that that part of the work under the contract which had been done prior to the dissolution had been paid for, and that this amount found on such settlement must have been for work done under the contract after dissolution. Was this settlement, treating it as an admission by Greer, made after the dissolution, in the absence of Hayman, admissible to bind Hayman? I have already stated that notwithstanding the dissolution Hayman still continued liable under the contract. That is not the present question. The question is whether the admission is admissible against Hayman. Upon this question there has been great conflict of authority. 17 Am. & Eng. Ency. Law (1 ed.) 1148. We find it stated very often, as in *Ruffner, Donnally & Co.* v. *Hewit, Kercheval & Co.*, 7 W. Va. 585, that "until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must in contemplation of the law have a continuance, so far as respects the winding up of its affairs." *Smith* v. *Zumbro*, 41 W. Va. 623. But as stated in 1 Lindley on Partnership, 412, "This doctrine requires consideration." Its generality may mislead us. It refers to the authority of a partner after dissolution to pay and receive debts, and even to make settlements. We might think that this would admit his admission to prove the very *existence* of a debt against the firm. But the statement does not mean that. Each partner is the agent of the other, owing to their relation; but that agency ceases when the relation ceases. One partner then cannot make any new obligations binding the firm. "The general rule established by the weight of authority is that the power of a partner to make admissions binding upon the firm ceases upon dissolution." 1 Ency. of Evidence, 580. "As a general rule, after dissolution, a partner cannot bind his co-partner by an admission of liability." 22 Am. & Eng. Ency. Law (2 ed.) 217. So holds *Thompson* v. *Bowman*, 6 Wall. 316. The question is not one of the right to prove the liability of both partners by independent evidence, but the right of one partner after dissolution, in the absence of the other, by admission, to make evidence, to create evidence, binding his late partner. The agency for that purpose has ceased, and an agent cannot bind his principal after the agency has ceased. The Virginia

authorities conflict on this question. *Gartland* v. *Lee*, 7 Leigh. 362, admits that an account rendered by the acting partner or his clerk, after dissolution, showing a balance due from the partnership, is binding on the retiring partner. But the court gave no opinion or reasoning. I take it that that admission related to things that had been done before the dissolution, acts of the partnership creating liability prior thereto. So with *Wilson & Griffith* v. *McCormick*, 86 Va. 995. I would doubt it even then under the preponderance of authority. In *Shelton* v. *Cockle, Crawford & Co.*, 3 Munf. 191, the court itself said that an acknowledgment of a partner after dissolution is not proper evidence of the existence of the debt to charge the other party. So *Munsford* v. *Overseer*, 2 Rand. 319, and *Roots* v. *Wellsford*, 4 Munf. 215. See note to the *Shelton Case*, in 3 Munf. Annotated 191, (670). I understand it to be well settled that after a partnership has been dissolved one partner cannot give a note for a ffrm debt, even though that debt existed during the partnership. The agency has ended and cannot create evidence against the other partner, in the absence of that other. *Roots* v. *Salt Co.*, 27 W. Va. 483. He cannot renew paper of the firm. 22 Am. & Eng. Ency. Law (2 ed.) 214. If, as is well settled, the one partner cannot make a note after dissolution, it is difficult to realize how he can make an oral admission of a debt, as it is evidence, if used, as well as a note.

Under principles above stated there was no error in the instructions for plaintiffs. It is useless to detail them as the legal principles they put are stated above.

The defendants were refused an instruction that if Hayman and Greer dissolved, and thereafter the plaintiffs looked to Greer alone for cutting the timber, and accepted him as owner of the timber, no recovery could be had for cutting after dissolution. What if he did accept him as mere owner? There was no evidence to support the claim that plaintiffs looked alone to Greer and accepted him as owner of the timber, so as to render the instruction even colorably relevant. After dissolution, Hayman wrote Burdett Bros. that he was no longer interested in the timber, and wished a release. This was 5th September, 1904. Burdett Bros. replied declining to release Hayman, and insisting that he was still bound

to them under the contract. Hayman admitted this letter.
Burdett Bros. wrote a letter, not denied, stating definitely
the written contract, informing Hayman that he and Greer
were largely indebted to Burdett Bros., and demanding pay-
ment of Hayman, and stating that they had been and still
were complying with the contract, and notifying Hayman
that they would hold both Greer and Hayman responsible.
This letter was 26th September, 1905. Hayman made no
response to it. He said or did nothing, but he and Greer let
the work go on to completion, not calling on Burdett Bros.
to cease work. These letters negative all idea that Burdett
Bros. looked only to Greer and discharged Hayman from lia-
bility. It is true that there was evidence that after the dis-
solution bills for cutting timber as it progressed were render-
ed to Greer, and a few notes for installments of money pay-
able for cutting timber as the work went on were given by
Greer. Though these facts be ever so true, they do not, as
a matter of law, release Hayman. There is no color of evi-
dence that Burdett Bros. agreed to release Hayman. There
have been holdings that where a bond is given by one part-
ner it merges the simple contract debt of the partners at law,
not in equity. *Niday* v. *Harvey*, 9 Grat. 454. But nowhere
is it held that a promissory note, as in this case, by one
releases the other partner, unless the creditor agrees to
receive it as payment and release the other partner. In
*Dages* v. *Lee*, 20 W. Va. 584, we find the law stated thus:
"Where there is an express agreement between the creditor
and a member of a partnership, whereby the creditor agrees
to take and does take the joint and several note of such part-
ner and his wife in discharge of the partnership debt, such
note is founded upon a valid consideration and is binding up-
on the wife's separate estate. The acceptance by the creditor
of such note of the partner and his wife with an express
agreement to surrender the evidence of the partnership debt,
operated a discharge of the partnership debt." See *Bowyer*
v. *Knapp*, 15 W. Va. 278; *Karn* v. *Blackford*, 1 Va. Decis-
ions 841. The general law is such. 22 Am. & Eng. Ency.
Law (2 ed.) 184, 550. Very often have this Court and the
Virginia court held a promissory note will not pay a debt,
unless it be so expressly agreed, as will be seen from the
multitude of cases cited in 11 Encyclopedic Digest 63. This

instruction would have misled the jury by presenting to it a matter not raised by the evidence, upon which a verdict agreeing with the instruction could not stand.

Judgment reversed, verdict set aside and new trial granted.

*Reversed.*