EVERETT WHITE

*v.*

ROBERT H. MOORE

(No. 9851)

Submitted April 15, 1947. Decided June 24, 1947.

*I. McGraw Warder* and *J. B. Fisher,* for plaintiff in error.

*Mahan, White, Higgins & Laird,* for defendant in error.

HAYMOND, JUDGE:

This action was instituted before a justice of the peace of Fayette County, West Virginia, by the plaintiff, Everett White, to recover from the defendant, Robert H. Moore, one half of an alleged partnership debt of $229.44 which the plaintiff contends accrued while he and the defendant were partners and which the plaintiff, after the dissolution of the partnership, paid to the Treasurer of the United States in settlement of a claim filed by the Office of Price Administration for overcharges received by the partnership in that amount from sales of beer. From a judgment for $114.72 and costs in favor of the plaintiff the defendant obtained an appeal to the Circuit Court of Fayette County.

The trial of the case in that court resulted in a directed verdict for the plaintiff in the same amount. Upon that verdict the circuit court entered the judgment of which the defendant complains in this Court.

The evidence with respect to the material facts is not conflicting, and the questions which arise upon this writ of error are questions of law.

The plaintiff and the defendant were general partners during the period October, 1943, to May 17, 1945, and as such operated a restaurant known as the Gauley Tavern at Gauley Bridge in Fayette County. In connection with this business they sold various kinds of beer in bottles. Prior to the formation of the partnership, and during the month of April, 1943, the defendant and a man named Biern had operated the same business by the name of Gauley Tavern, as partners, until the plaintiff purchased Biern's interest in October, 1943. By a regulation of the Office of Price Administration, the maximum price at which beer could be sold in various types of bottles at the Gauley Tavern during the period of the partnership between the plaintiff and the defendant, which existed from October, 1943, to May 17, 1945, when the defendant disposed of his interest, was the price which had been charged between April 4 and April 10, 1943, for each type of bottled beer. During this period the price of beer at the Gauley Tavern was thirteen cents for a small standard bottle, eighteen cents for a small premium bottle, thirty-two cents for a standard quart bottle, and forty-two cents for a premium quart bottle.

From the time the plaintiff purchased the interest of Biern and became a partner with the defendant in October, 1943, until May 17, 1945, when the defendant sold his interest and ceased to be a partner, the price charged by them for beer sold at the Gauley Tavern was fifteen cents for a small standard bottle and twenty cents for a small premium bottle, or two cents for each bottle in excess of the maximum price allowed by the regulation. The price charged for the beer in a standard quart bottle was thirty-five cents and in a premium quart bottle was forty-five cents, or three cents for each such bottle of beer above the authorized price. Those prices were obtained by the plaintiff and the defendant because of a misunderstanding of the regulation and apparently in the belief that they were permitted by it. With the knowledge and the consent of the defendant, the plaintiff, on two or three occasions, discussed the matter with the representative of

the local price and rationing board of the Office of Price Administration in Fayette County for the purpose of ascertaining and determining the authorized price of the different types of bottled beer sold by the plaintiff and the defendant at the Gauley Tavern.

No definite understanding, however, was reached during the negotiations. Several days after the defendant sold his interest in the partnership the local board called upon the plaintiff for a report or an audit of the sales of beer made by the partnership during the period July 1, 1944, to April 15, 1945, including the number and the kinds of bottles and the price received for each bottle of beer. The plaintiff informed the defendant of this action of the board. The defendant stated that he had no audit to make, that he had sold his interest in the business, and that he did not consider that he had violated any law or that he owed anything in connection with the sales of beer by the partnership. The plaintiff then prepared the report from the partnership records and submitted it to the board.

On July 27, 1945, the plaintiff received a written notice from the local price panel acting for the Office of Price Administration, addressed to White and Moore, that the overcharges computed from the audit of sales of beer from July 1, 1944, to April 15, 1945, amounted to $229.44 and that a certified check or a money order payable to the Treasurer of the United States in that sum, should be mailed to it on or before August 15, 1945. After receipt of the notice the plaintiff conferred with the defendant, who refused to pay any part of the charge. On July 30, 1945, the plaintiff, having been informed that unless the claim was paid action for three times the amount would be instituted, made payment of the account with his own funds and obtained a receipt from the local board. He seeks to recover one half of this payment of $229.44 from the defendant in this action.

Upon the trial of the case in the circuit court the plaintiff testified to the foregoing facts in connection with the claim of the Office of Price Administration for the over-

charges made by the partnership during the period July 1, 1944, to April 15, 1945, and the manner in which he satisfied the account. The authorized prices for the kinds of bottled beer sold during that period and the prices charged for them by the partnership were established by the testimony of other witnesses. Those facts were not denied by the defendant, who testified as a witness in his own behalf. He also admitted that the prices charged by him and the plaintiff were fifteen cents and twenty cents instead of thirteen cents and eighteen cents for the bottled beer sold at the Gauley Tavern during practically all of the period July 1, 1944, to April 15, 1945. His contention is that the prices of fifteen cents and twenty cents per bottle were permitted by the regulation. That contention, however, is not sustained by the evidence.

Two principal errors are assigned by the defendant to reverse the judgment of the trial court.

The first assignment is that the claim of the Office of Price Administration, an agency of the Federal Government acting in its behalf, was not a partnership debt. Though the defendant does not deny the clearly established fact that the transactions out of which the overcharges arose occurred during the existence of the partnership or his knowledge of or participation in them as a partner of the plaintiff, he insists that the postponement of the determination and the assessment of the amount until after May 17, 1945, when he disposed of his interest, removed the transaction from the category of partnership obligations. In short, he contends that the obligation, if valid, is the debt of the plaintiff or of the new partnership between the plaintiff and the purchaser of the interest formerly owned by the defendant and not the debt of the partnership which formerly existed between him and the plaintiff, and that he is not liable for any part of it. This position is not well founded in fact or in law. The acts which gave rise to the liability for the overcharges were performed and completed while the plaintiff and the defendant were partners, and the liability of the partners to pay a claim based upon a definite and clearly ascertainable

number of sales at fixed unit rates attached during the existence of the partnership. The postponement of the determination of the amount of the claim, of the levy of the assessment, and of the demand for payment, until after that relation was dissolved by the action of the defendant in selling his interest to a third person, does not change the nature of the claim or destroy its character as a partnership debt. The evidence discloses a valid claim against the partnership for the full amount of which each of the partners was liable to the claimant. *Harris* v. *Welch,* 87 W. Va. 154, 104 S. E. 277; *Weimer* v. *Rector,* 43 W. Va. 735, 28 S. E. 716. The plaintiff and the defendant were equal general partners and, as between them, each was liable for one half of the entire amount. *Teter* v. *Moore,* 80 W. Va. 443, 93 S. E. 342; *Sperry* v. *Tulley,* 76 W. Va. 106, 84 S. E. 1067.

The dissolution of a partnership does not, of itself, release a partner from the payment of a debt contracted by it before his retirement. *Bays* v. *Johnson,* 80 W. Va. 559, 92 S. E. 792; *Burdett* v. *Greer,* 63 W. Va. 515, 60 S. E. 497, 15 L. R. A. (N. S.) 1019, 129 Am. St. Rep. 1014. It was the right, as well as the duty, of the plaintiff as a former member of the partnership, after its dissolution, to pay the debt incurred during its existence; and the evidence clearly indicates that the payment by him of the claim for the overcharges benefited both the plaintiff and the defendant, as former members of the partnership, to the extent of relieving each of them of the excess in penalty and costs which could have been recovered if an action had been instituted by the Office of Price Administration for the collection of the claim. This Court has held that "until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must, in contemplation of law, have a continuance, so far as respects the winding up of its affairs." *Ruffner* v. *Hewitt,* 7 W. Va. 585; *Smith* v. *Zumbro,* 41 W. Va. 623, 24 S. E. 653; *Burdett* v. *Greer,* 63 W. Va. 515, 60 S. E. 497, 15 L. R. A. (N. S.) 1019, 129 Am. St. Rep. 1014. The plaintiff paid an existing partnership debt to prevent its collection by legal proceedings

against which, as clearly appears from the evidence, neither he nor the defendant could present any valid defense, and it is evident that he satisfied the claim solely for that purpose.

The right of the plaintiff to recover his claim from the defendant in an action at law requires consideration. The rule is firmly established in this jurisdiction, and generally, that an action at law may not be maintained between partners with respect to partnership transactions unless there has been a prior settlement of the partnership affairs, *McComas* v. *Turman,* 116 W. Va. 91, 178 S. E. 630; *Crane* v. *Dalton,* 102 W. Va. 550, 136 S. E. 33. This Court has also held that the settlement of partnership accounts is within the exclusive jurisdiction of courts of equity. *Daniel* v. *Gillespie,* 65 W. Va. 366, 64 S. E. 254. If unadministered assets of the general partnership between the plaintiff and the defendant remained or existed, and if its accounts were actually unsettled, it would have been necessary for the plaintiff to invoke the aid of a court of equity to obtain relief. No condition of that kind, however, appears in this case. It is evident that no assets of the partnership remained after its dissolution, that the purpose of the partnership had been accomplished, and that no settlement of its accounts was required to wind up its affairs. The claim of the plaintiff, based on the overcharges which he paid, so far as the record discloses, constituted the only indebtedness of the firm. In this situation the plaintiff was entitled to contribution from the defendant for the defendant's share of the debt. 47 C. J., 810, 811. There is, moreover, a well recognized exception to the general rule that one partner may not maintain an action at law against another partner involving partnership transactions without a prior accounting. This exception applies in the circumstances which exist in this litigation. Within this exception, appellate courts in other jurisdictions have held, in numerous reported cases, that an action at law, based upon a partnership transaction, may be maintained by one partner against another partner when no accounting with respect to a variety of partnership affairs is necessary

and when the transaction which gives rise to the asserted liability consists of a single item or account. See 21 A. L. R., Annotations, pages 57 and 64, and cases there cited. One partner may maintain an action at law against another partner when the partnership is terminated, all the debts paid, and its affairs are so adjusted that nothing remains to be done except to pay the amount due from the one to the other if the amount involves no complicated account. See *Pugh* v. *Newbern,* 193 N. C. 258, 136 S. E. 707, 58 A. L. R. 617. When a partnership has been dissolved and its affairs have been so adjusted that the amount of the indebtedness due from one partner to another partner can be readily ascertained, the partner to whom such indebtedness is owing may maintain an action at law against the other partner. *Little* v. *Moore,* 55 Ga. App. 570, 190 S. E. 811. A partner who has paid firm debts may sue the other partner at law for contribution where there are no partnership assets and there is only one liability. *Lawson* v. *Davis,* 194 Ky. 67, 238 S. W. 402. When no adjustment of the partnership account is necessary to determine the merits of the case, one partner may recover the amount of his claim from another partner in an action at law. *Newman* v. *Ruby,* 54 W. Va. 381, 46 S. E. 172. See *McComas* v. *Turman,* 116 W. Va. 91, 178 S. E. 630.

The second contention of the defendant that the evidence of the plaintiff of his transactions with the local board, which culminated in his payment of the claim after the dissolution of the firm, is incompetent as an acknowledgment or an admission of a partnership debt by a former partner after it was dissolved and in the absence of the defendant, the other former member of the firm, is not well founded. It is well settled that, after dissolution of the partnership, one partner can not bind his former partner by a new contract or impose upon him a fresh liability. *Hall* v. *Lanning,* 91 U. S. 160, 23 L. ed. 271. See Story on Partnership, 7th ed., paragraph 322. An acknowledgment or an admission by one partner, in the absence of the other partner, after dissolution of the partnership, is not admissible as evidence to create a partnership debt or to

charge another partner. *Burdett* v. *Greer,* 63 W. Va. 515, 60 S. E. 497, 15 L. R. A. (N. S.) 1019, 129 Am. St. Rep. 1014. That principle, however, does not apply to the facts of this case.

The question which here arises involves the right to prove, by independent evidence, the liability of both members of the partnership. That liability was so established by the proof introduced in behalf of the plaintiff. The existence of the regulation and its application to the sales upon which the overcharges were predicated were proved by the testimony of an employee of the local war price and rationing board. The prices at which the beer was sold by the partnership during the period for which the overcharges were assessed were established by the evidence of one of its customers. Though the defendant denied that any notification of which he had knowledge had been given that the prices had been fixed by the regulation, he admitted, in his testimony, that the prices of fifteen cents and twenty cents per bottle were charged by the partnership during the entire period of its existence except the space of about two weeks when the prices of thirteen cents and eighteen cents prevailed.

No new claim or no fresh liability occurring after the dissolution of the partnership was acknowledged, admitted, created or sought to be imposed by any act or declaration of the plaintiff. The evidence given by the plaintiff of his negotiations with the representatives of the local board with respect to the number of bottles sold, the prices charged, and the prices authorized, related to transactions which occurred during the continuance of the partnership. It did not constitute an admission of any new contract or of any other liability. Clearly that evidence did not contravene the rule which excludes admissions or declarations by one partner in the absence of another partner, made after the partnership is dissolved, for the purpose of charging him with a partnership debt or creating a new liability against him. The authority of the plaintiff to participate as the agent or the representative of the partnership in the transactions which created

the debt existed when those acts were performed, and, for that reason, the testimony of the plaintiff with respect to them was admissible. His testimony concerning his reason for paying the claim and the manner and the amount of the payment was not an admission of liability against his former partner and was not subject to objection on that ground. It involved his right to prove his claim and was competent for that purpose.

The defendant cites and relies upon the case of *Burdett* v. *Greer,* 63 W. Va. 515, 60 S. E. 497, 15 L. R. A. (N. S.) 1019, 129 Am. St. Rep. 1014, decided by this Court in 1908, and the decisions of the Supreme Court of the United States in the cases of *Bell* v. *Morrison,* 1 Peters 351, 7 L. ed. 174; *Thompson* v. *Bowman,* 6 Wall. 316, 18 L. ed. 736; and *Hall* v. *Lanning,* 91 U. S. 160, 23 L. ed. 271. Each of these cases is readily distinguishable from the case at bar.

The *Burdett* case merits discussion. As to the other cases just cited none is necessary. In the *Burdett* case, over objection of the defendants, testimony of the two plaintiffs, the Burdett brothers, was admitted as to a statement made to them by the defendant Greer, a former partner of the other defendant, Hayman. This statement was made by Greer in the absence of Hayman, after the partnership between them had been dissolved. The substance of the statement was that Greer and the Burdett brothers entered into a settlement to the effect that a certain sum of money was due to them. The evidence in the case showed that this settlement was made by Greer with the Burdetts long after the partnership between Greer and Hayman had been dissolved, and after the completion of work under a contract made between the Burdetts and the partnership during its existence. The evidence also disclosed that the part of the work under contract which had been performed before the partnership was dissolved had been paid for, and that the amount agreed upon in the settlement was for work done under the contract after the dissolution of the partnership.

The statement of the settlement was offered as evidence

to establish the debt and to fix liability upon Greer's former partner for the amount agreed upon between Greer and the Burdetts. The effort of the plaintiffs was to create, by this admission of Greer, evidence of the existence and the amount of their claim and by it to render his former partner liable for its payment. This Court held that such admission, made after the partnership had ceased to exist, was not competent evidence to establish liability upon the partner who was not present when the admission was made, and that the power of one partner to make admissions binding upon the firm terminates when it is dissolved. The syllabus which deals with that subject is stated in these terms: "An admission by one partner, made after dissolution, of the existence of a debt against a firm, or a settlement made with him finding a debt against it, the other partner not being present when such admission or settlement is made, does not bind the other partner, and is not admissible evidence against him."

The clear and emphatic distinction between the admission rejected in the *Burdett* case and the kind of evidence introduced in this case by the plaintiff to show how the debt of the partnership was incurred before its dissolution, the manner in which it was paid, and the reason for its payment, is so obvious that further discussion or comment concerning this point is unnecessary.

It is pertinent to observe that Point 1 of the syllabus in the *Burdett* case states that "All the partners are still bound, after dissolution, by a contract made during the partnership." For the same reason the plaintiff and the defendant were liable, after the partnership was dissolved, for the debt which the evidence in this case clearly shows was incurred while that relation continued between them.

As the questions already disposed of are decisive of the case, there is no need to discuss or to consider issues raised by the other assignments of the defendant.

For the reasons stated the judgment of the Circuit Court of Fayette County is affirmed.

*Affirmed.*